## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ADRIAN R. WALLIS,**

      **Petitioner,**

**vs.**

                                      **CASE NO. 3:07cv440-SPM/WCS**

**WALTER A. McNEIL,**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Adrian R. Wallis pursuant to 28 U.S.C. § 2254.  Doc. 1.  *See also*, doc. 3 (memorandum).  Petitioner challenges his convictions, after a *nolo contendere* plea, for two counts of lewd and lascivious battery and one count of lewd and lascivious molestation upon persons 12 years of age or older but less than 16 years of age.  The convictions were in the Circuit Court of the First Judicial Circuit, in and for Santa Rosa County, Florida, case number 02-808-CFMA.

Respondent filed an answer and the record in paper form, doc. 15, and Petitioner filed a traverse, doc. 20.  References to exhibits herein are to the paper exhibits

submitted with the answer.  Respondent concedes that the petition was timely filed.

Doc. 15, p. 5.

**Trial court proceedings leading to the plea**

Petitioner entered into a written plea agreement to plead no contest to the first

three charges, with the fourth charge to be dismissed.  Ex. B.  The plea agreement

provided:

> State agrees to a cap of 25 years prison, followed by probation.  Under the
> Guidelines the lowest permissible prison sentence is 16.94 years.  The
> state opposes a departure, but the defendant may seek whatever
> sentence he desires.

*Id*.  The court sentenced Petitioner to 15 years in prison on count one, followed by 5

years probation; 10 years in prison on count two, followed by 5 years probation,

consecutive to the other sentences; 15 years probation on count three, consecutive to

the other sentences.  Ex. D (sentencing transcript), pp. 39-40.  The total sentence,

therefore, was 25 years in prison, followed by 25 years probation.  Petitioner did not

appeal.  He did litigate a Rule 3.850 motion.

Since convictions were the result of pleas, the only indication of the trial evidence

was revealed in the hearing on the Rule 3.850 motion.  As will be discussed ahead,

Petitioner made admissions during a non-custodial interview with a law enforcement

officer.  Additionally, his daughters were available to testify in detail as to the manner in

which he sexually assaulted them.

**Section 2254 Standard of Review**

"An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."  28 U.S.C. § 2254(b)(2).[1]  But habeas corpus relief may be granted

only if Petitioner has properly exhausted his federal claims in state court.  § 2254(b)(1)

and (c).  To do so the federal claim be fairly presented to the state court, to give the

State the opportunity to pass upon and correct alleged violations of federal rights.  *See*

Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004)

(citations omitted); Duncan v. Henry, 513 U.S. 364, 365-366, 115 S.Ct. 887, 888, 130

L.Ed.2d 865 (1995).  While it is not necessary that the petitioner cite "book and verse" of

the Constitution, the state court must be alerted to the fact that a federal constitutional

claim is raised.  Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see*

*also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner

must "do more than scatter some makeshift needles in the haystack of the state court

record") (citations omitted).

     The petitioner also "must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728,

1732, 144 L.Ed.2d 1 (1999); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying

this one complete round requirement to state collateral review process as well as direct

appeal.  If a claim is not fairly presented through one complete round of state court

review and review is no longer available in state court, it is procedurally defaulted and

the petitioner must demonstrate cause and prejudice for the default *or* a miscarriage of

_____

     [1] If no constitutional claims are raised, then §2254 is inapplicable and the
exhaustion inquiry is irrelevant.  Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct.
1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

justice.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640

(1991); <u>McCleskey v. Zant</u>, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113

L.Ed.2d 517 (1991).[2]

      For claims that were properly exhausted and adjudicated in state court, this

court's review is limited.  "[A] determination of a factual issue made by a State court

shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

<u>Bui v. Haley</u>, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).

Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

the adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is

satisfied "only if it is shown by clear and convincing evidence that the state court's

presumptively correct factual findings do not enjoy support in the record."  <u>Lomholt v.

Iowa</u>, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

      As to legal findings, a petitioner is entitled to federal habeas relief only if the state

court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States."  § 2254(d)(1).  "[C]learly

---

[2] The miscarriage of justice exception applies only to extraordinary cases, where a constitutional violation has probably resulted in conviction of an innocent person. <u>McCleskey v. Zant</u>, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). *See also* <u>House v. Bell</u>, 547 U.S. 518, 536-537, 126 S.Ct. 2064, 2076-2077, 165 L.Ed.2d 1 (2006) (explaining what must be shown to demonstrate actual innocence as a "gateway" to review of a defaulted claim).

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted) ("The decisions of other federal circuit courts (and our

decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the

decisions demonstrate that the Supreme Court's pre-existing, clearly established law

compelled the circuit courts (and by implication would compel a state court) to decide in

a definite way the case before them.").  *See also*, Carey v. Musladin, 549 U.S. 70, 74-

77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather

than *dicta*, of the Supreme Court, collecting cases to show that "[r]eflecting the lack of

guidance from this Court, lower courts have diverged widely in their treatment of

defendants' claims.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843,

1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.  *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that

no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler).  There are no rigid requirements or absolute duty to investigate a particular defense.  Fugate v. Head, 261 F.3d at 1217. *"*Stacking defenses can hurt a case." *Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting*, Hill.  The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts

of his case in an objectively unreasonable manner." <u>Bell</u>, 535 U.S. at 698-699, 122

S.Ct. at 1852 (*citing* <u>Williams</u>).   "[T]he most important point is that an *unreasonable*

application of federal law is different from an *incorrect* application of federal law."

<u>Williams v. Taylor</u>, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner claims that his sentence exceeded the limit set forth in the plea

agreement.  Doc. 1, p. 5.  Petitioner claims in the alternative that if the plea agreement

permitted this sentence, then his plea was not knowing and voluntary because, during

the plea colloquy, he did not understand the meaning of the "cap" in the plea

agreement, and at sentencing, when this was explained to him, he was under the

influence of psychotropic medications.  *Id.*, p. 6.  Respondent agrees that state court

remedies were exhausted as to these claims.  Doc. 15, p. 12.

**Whether the sentence exceeded the limit in the plea agreement**

A claim that the prosecution has not honored a plea agreement is a due process

claim.[3]  The Rule 3.850 court ruled that the claim:

> . . . that the trial court erred in sentencing a defendant contrary to an
> accepted plea agreement, if properly preserved, could or should have
> been raised on appeal.  As such, the issue is procedurally barred for
> consideration on postconviction relief.  *See* Fla. R. Crim. P. 3.850(c);
> *Mourra v. State*, 884 So. 2d 316, 320 (Fla. 2d DCA 2004) (a defendant
> who has not sought relief pursuant to rule 3.017(1) but thereafter files a

---

[3] When a guilty plea has been induced by a prosecutor's promise, "such promise must be fulfilled."  <u>Santobello v. New York</u>, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).  Due process requires that the Government comply with all contractual agreements it has made with a criminal defendant.  <u>United States v. Doe</u>, 940 F.2d 199, 202 (7th Cir.), *cert. denied*, 112 S.Ct. 201 (1991); <u>United States v. Boatner</u>, 966 F.2d 1575, 1577 (11th Cir. 1992).

motion pursuant to rule 3.850 may be limited to claim ineffective
assistance of counsel for failure to file a timely motion to withdraw plea).

Ex. F, R. 376.  Respondent argues, therefore, that this claim was procedurally

defaulted.  Doc. 15, p. 13.  The trial court, however, also reached the merits of this

claim, finding that the sentence was not in excess of the plea agreement.  Ex. F, R. 376.

Accordingly, since the state court did not rely solely upon the procedural bar, this court

should reach the merits.[4]

    The state court's ruling is reasonable.  The plea agreement provided that the

*prison term* was limited by 25 years, followed by probation without limit:  a "cap of 25

years prison, followed by probation."  Ex. B, p. 1.  The adjectival prepositional phrase

"of 25 years prison" is a truncated way of saying "of 25 years in prison," with the

preposition "in" understood.  "In prison" is an adjectival phrase modifying years.  The

entire phrase, "of 25 years prison" modifies the noun "cap."   The phrase "followed by

probation" has no reference to the word "cap," that is, no reference to any term limit.  A

thing that follows is sequentially after, and not included in the preceding thing.  Any

other reading is unreasonable.  Had the plea agreement had the effect that Petitioner

argues, this passage would read: "a cap of 25 years of any combination of prison or of

---

    [4] Where the defaulted claim was presented to a state court and the state court's
decision rests on the independent and adequate state ground of procedural default, the
federal courts will not address the merits absent a showing of cause and prejudice for
the default.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 730-732, 111 S.Ct. 2546, 2554-
2555, 115 l.Ed.2d 640 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 97 S.Ct. 2497, 53
L.Ed.2d 594 (1977).  On the other hand, where defaulted claims are presented and the
state court's decision "fairly appeared to rest primarily on resolution of those claims, or
to be interwoven with those claims, and did not clearly and expressly rely on an
independent and adequate state ground, a federal court may address the petition."
<u>Coleman</u>, 501 U.S. at 735, 111 S.Ct. at 2557 (footnote omitted); <u>Harris v. Reed</u>, 489
U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

probation."  Since the plea agreement does not read as argued, and the state court has authoritatively so ruled,[5] there is no federal due process claim.[6]  Petitioner has not shown that the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

> **Whether Petitioner's plea was involuntary because he did not understand that he could be sentenced to 25 years in prison followed by probation**

Petitioner contends that his plea was involuntary because, at the initial plea colloquy, he did not understand that he could be sentenced to 25 years in prison followed by a term of probation.  He contends that the beginning of his sentencing hearing, when this aspect of the plea agreement was discussed, was a continuation of the plea colloquy.  He alleges that he was on psychotropic medication during the sentencing hearing and consequently was unable to understand the discussion.

Respondent argues that the state court ruled that this claim was procedurally defaulted.  Doc. 15, p. 13.  That may be true, as discussed above, since the ruling came

---

[5] "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' "  Herring v. Secretary, Dept. of Corrections, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 948 (2005), *quoting*, Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir.1997) (citations omitted); Cargill v. Turpin, 120 F.3d 1366, 1381 (11th Cir. 1997), *cert. denied*, 523 U.S. 1080 (1998), citing McBride v. Sharpe, 25 F.3d 962, 972 (11th Cir.) (en banc ), *cert. denied*, 513 U.S. 990 (1994).

[6] A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution.  Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines).

as to claim 5 in the Rule 3.850 motion.  It is noted, though, that the trial court did not mention the claim that the plea was involuntary or that Petitioner was on psychotropic medications at sentencing when the "cap" was discussed, and it did not adjudicate the merits of that claim.

Further, it is not entirely clear that the procedural bar relied upon was an adequate state law ground.

> When looking to state law to determine if a petitioner has failed to exhaust his state remedies, and thus created a procedural bar to his claims, the procedural bar "must be firmly established and a regularly followed state practice."  *Cochran v. Herring*, 43 F.3d 1404, 1408 (11th Cir. 1995).

Mancill v. Hall, 545 F.3d 935. 940 (11th Cir. 2008); Payne v. Allen, 539 F.3d 1297, 1313 (11th Cir. 2008).   Mourra, the case relied upon by the trial court for the procedural default ruling, noted in *dicta* that Rule 3.170(l) duplicated the relief available by Rule 3.850 for an involuntary plea, and said that "*although the case law is not well developed*, the creation of rule 3.170( l ) *may* significantly limit the issues that can be raised under rule 3.850 regarding the withdrawal of a plea."  884 So. 2d at 319 (emphasis added).  So far it appears that only the Fifth District Court of Appeals has squarely ruled that the issue of the voluntariness of a plea should be addressed by a Rule 3.170(l) motion, and, as a consequence, "the defendant is constrained by his filing to limit his challenge regarding the voluntariness of his plea [in a Rule 3.850 motion] to allegations regarding the ineffective assistance of defense counsel in counsel's efforts to represent the defendant during the plea proceedings."  Barnhill v. State, 828 So.2d 405, 407  (Fla. 5th DCA 2002).

If the claim is procedurally defaulted, Petitioner must show cause and prejudice before this court can address the merits.  This requires an evaluation of the merits of the claim.  Either way, therefore, this court must look at the merits of the claim.

At the plea colloquy, Petitioner told the court that he had read the plea agreement and understood it.  Ex. C, R. 158.  He said that he had an opportunity to go over the plea agreement with his attorney.  *Id.*  He said he had not taken any drugs or alcohol in the 24 hours preceding the plea, so he was not taking psychotropic medication then.  *Id.*, R. 159-160.  Petitioner's lawyer explained the meaning of the sentencing cap.  He said:

> Judge, there is a 25-year cap.  Minimum under the Guidelines is 16.9 years.  Mr. Wallis and I have discussed that there may be a potential for the Court to go below the Guidelines.

*Id.*, R. 160.  Petitioner's attorney represented that he had informed Petitioner that it was "rare" to get a sentence below the minimum called for by the Guidelines.  *Id.*  The prosecution said it opposed a downward departure, and "may ask for the cap to be imposed."  *Id.*, R. 161.  Petitioner's counsel said that he and Petitioner understood that the State might seek the "cap" as a prison sentence, and acknowledged that it was "in the Plea Agreement."  *Id.*  The court asked Petitioner if he understood what the prosecutor and his own attorney said, and he said "Yes, Your Honor."  *Id.*  The court asked Petitioner if he understood "the discretion the Court has in that regard," and again Petitioner said yes.  *Id.*  Petitioner's attorney represented that several times he had been to the jail where Petitioner was held and discussed the plea agreement with Petitioner.  *Id.*

In a post-conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); see also United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases). The plea agreement was plainly written and should have been understood by an objectively reasonable person.  Petitioner said he understood it.  The "cap" was thoroughly discussed only with respect to a prison sentence, without any reference to the length of a probationary term.  Petitioner was not taking medication then. Consequently, regardless of what happened at sentencing, Petitioner understood the plea agreement and cannot show prejudice to the outcome.

The sentencing colloquy does not change this conclusion.  Petitioner's attorney began the sentencing hearing with the following representation:

> Mr. Wallis and I have discussed that, and it is his understanding and agreement that regardless of what sentence the Court issues today, and as, for incarceration, that should you decide to put Mr. Wallis on probation after his incarceratory period, that up to the maximum could be sentenced on violation.

Ex. D, R. 115.  This prompted the following exchange:

Court:          All right.  I'm going to inquire, because for clarity of the
                record when I read the Plea Agreement it was – I wanted to

make sure there was a meeting of the minds and understanding on the part of the defendant as to the terms.

And you've been, or you've entered a plea on three second degree felonies.

Defendant:     Yes.

Court:          Do you understand?

Defendant:     Yes, Your Honor.

Court:          Okay.  Each one of those is punishable by a maximum of 15 years state prison.  Do you understand that?

Defendant:     Yes, Your Honor.

Court:          So the total maximum imposable punishment by law for the offenses is 45 years.

Defendant:     Yes, sir.

Court:          Do you understand that?

Defendant:     Yes.

Court:          Now, the Plea Agreement calls for a cap at sentencing today for 25 years.

Defendant:     Yes, sir.

Court:           So I want to, I want to ask Mr. Griffith [Petitioner's attorney] and Mr. Scherling [the prosecutor] hypotheticals, and then ask if you agree with that.

Defendant:     Yes.

Court:          Mr. Griffith, if on Count 1 I sentenced him today – hypothetically – to 15 years state prison; Count 2, two years state prison, consecutive, followed by 13 years probation on Count 2, and 15 years probation on Count 3.  So that's 17 years prison, 28 years probation.

                *And over the period of probation he violates probation.  What is his exposure in terms of state prison*?

Griffith:       Not being a mathematician, Judge, 17 minus 45 would give you about *28 years*.  So that would be the exposure on a violation.

Court:          Mr. Scherling, do you agree?

Scherling:      Judge, I concur.  The Plea Agreement states a cap of 25 years followed by probation.  *So I would concur that he can be violated and sentenced to the remainder of probation as state prison.  Plus, up to a maximum of 15 years per count on the probationary counts.*

Court:          *Mr. Wallis, you agree*?

Defendant:      Yes, Your Honor.  I understand.

Court:          And you understand and you agree?

Defendant:      Yes, sir.

Court:          *And that was your understanding when you entered the plea agreement*?

Defendant:      *Not at that time, but I do understand now, Your Honor.*

Court:          Well, if it wasn't your understanding at the time when you entered into the agreement, would you like to withdraw from the Plea Agreement?

Defendant:      No, sir, Your Honor.

Court:          Do you want, with the understanding we have just discussed it today, do you want the benefit of this agreement, which is a cap of 25 years at sentencing today?

                But understanding, depending on the circumstances, if you were [to] violate probation – if there was a probationary period, and I don't know if there will be – but hypothetically, if there was a probation period, you would have potentially 20 additional years exposure.

                Do you understand?

Defendant:      Yes, sir, Your Honor.

| | |
|---|---|
| Court: | Do you agree to that? |
| Defendant: | Yes, Sir. |
| Court: | With that as the understanding that you've expressed, would you like to withdraw from this agreement at this time? |
| Defendant: | No, sir, Your Honor. |
| Court: | And you want to persist in the plea and you want to persist in the benefit of the agreement with the understanding that we have all discussed? |
| Defendant: | Yes, Your Honor. |
| | All right.  Any further inquiry by either counsel? |
| Griffith: | Mr. Wallis understands that if it weren't for the agreement then the State could reinstate the additional count which would give an exposure of 60 years, without the minimum. And he and I have discussed that. |
| | And he and I have also discussed the fact that were the Court to give the maximum sentence under the agreement, which is 25 years, and then give Mr. Wallis a year probation or 15 years probation, that were he to violate he could be sentenced to an additional 20 years in state prison. |
| Court: | All right.  With that understanding I'm ready to proceed. . . . |

Ex. D, R. 115-119 (emphasis added).

There is a difference between a claim that Petitioner did not understand that the term of a sentence of probation was not limited by the "cap," and a claim that Petitioner did not understand that if he violated probation, he could be sentenced to another prison term equal to the term of probation.[7]  The colloquy set forth above focuses upon the

---

[7] If Petitioner had exhausted his state court remedies as to a claim that his plea was involuntary because he did not understand that if he violated probation, he could receive another prison sentence, the claim would fail.  Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), *cert. denied*, 516 U.S. 1058 (1996) (the court's failure to

consequences of violation of probation, not upon the potential term of probation.

Moreover, if Petitioner was so impaired by psychotropic medication at the time of the

beginning of the sentencing hearing that he was not then competent to understand the

proceedings, then his assertion at the commencement of sentencing that he had not

previously understood the meaning of "cap of 25 years prison, followed by probation" is

suspect.

In summary, the evidence from the sentencing transcript does not undermine the

plea colloquy.  Assuming that Ground One was procedurally defaulted, Petitioner not

shown prejudice to the outcome.  If it was not procedurally defaulted, Petitioner has not

shown the state court's adjudication of the merits of this federal claim has "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  §

2254(d)(1).

---

determine that the defendant understood that he could receive more prison time if he
violated probation was only a collateral consequence, and did not render the plea
involuntary); Johnson v. Dees, 581 F.2d 1166, 1167 (5th Cir. 1978) (in a § 2254 case,
the failure to inform the defendant that he would be ineligible for parole and "good time"
credits was a collateral consequence, and did not render the plea involuntary); Warren
v. Richland County Circuit Court, 223 F.3d 454, 457-458 (7th Cir. 2000), *cert. denied*,
531 U.S. 1168 (2001) (failure to inform a sex offender that he could not continue to
maintain his innocence during mandatory counseling did not render the plea
involuntary).  In federal cases, construing FED. R. CRIM. P. 11, the court need not
explain collateral consequences of a guilty plea for the plea to be knowing and
voluntary.  United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003)
(concerning a failure to inform the defendant that he could appeal the validity of his
sentence).  Indeed, there is probably no federal constitutional requirement that a state
court advise a defendant of the collateral consequences of his guilty plea before taking
a plea.  Jackson v. McDonough, 2007 WL 2572323, *8-9 (N.D. Fla. 2007) (No.
5:05cv140-RS/MD).

**Ground Two**

Petitioner contends that his trial attorney was ineffective because he advised Petitioner that he would not be sentenced to prison and probation for combined terms of more than 25 years, and that any prison sentence would not exceed the minimum sentence under the Guidelines, 16.9 years.  Respondent agrees that Petitioner exhausted his state court remedies as to these claims.  Doc. 15, p. 18.

The trial court found that these claims were "belied from the record."  Ex. F, R. 372.  The court pointed out that the plea agreement itself clearly spelled out the terms. *Id.*  The state prison "cap" was "25 years prison," "followed by probation."  It does not limit the combined terms of probation and prison to 25 years.  *Id.*  The plea agreement also stated that 16.94 years was the lowest permissible sentence.  *Id.*; Ex. B, p. 1 (plea agreement) ("Under the Guidelines the lowest permissible prison sentence is 16.94 years.  The state opposes a departure, but the defendant may seek whatever sentence he desires.").  Moreover, the court noted, as set forth above, that during the plea colloquy, Petitioner's attorney acknowledged that the 16.94 years was the *minimum* under the Guidelines, not a promised sentence, and the prosecutor said the State might seek the maximum, a 25 year prison sentence.  *Id.*, R. 373.  The court noted that Petitioner's lawyer said that he had advised Petitioner that a departure below the Guidelines was "rare."  *Id.*  Defendant said he understood.  *Id.*  The court noted that Petitioner said he had not had any drugs or alcohol in the prior 24 hours.  *Id.*, R. 374.

In summary, this claim is unsupported.  It is contradicted by the plea agreement itself, which limited the prison sentence to 25 years and informed Petitioner that 16.94 years was the *minimum* Guideline sentence, not a promised sentence.  Further, as

already discussed above, at the plea colloquy Petitioner's lawyer and the prosecutor

discussed the 25 year limitation (the "cap") *only* with respect to a prison sentence, not

with respect to a term of probation.  Petitioner's lawyer likewise represented that 16.9

years was the *minimum* under the Guidelines, not a promised sentence, that the State

might ask for a prison sentence up to 25 years, and that the court had full discretion in

sentencing.  The Guideline minimum sentence could not have been a promised

sentence if the State said it might ask for a 25 year prison sentence.

In summary, there was no need for an evidentiary hearing before the state court,

given the record.  Petitioner has not shown that the state court's adjudication of the

merits of ground two has "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding," or has "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  § 2254(d)(1) and (2).

**Ground Three**

Petitioner contends that his attorney ineffectively litigated the motion to suppress

because at the suppression hearing, he failed to ask the interrogating officer whether he

told Petitioner that signing a written statement was irrelevant.  Doc. 1, p. 7.  Petitioner

asserts that Detective Lio told him that the form was irrelevant "because it was a Florida

form and 'you're in Louisiana at the time of the statement, don't worry.' "  Doc. 3, p. 21.

Petitioner asserts that had his attorney established this at the suppression hearing,

Petitioner's statements would have been suppressed.  *Id.*  Petitioner argues that the

representation that the written statement was "irrelevant" was the same as telling

Petitioner that what he said would be "off the cuff," as occurred in United States v. Walton, 10 F.3d 1024 (3d Cir. 1993).

In the Walton case, the court said that telling the accused that the statement would be "off the cuff" was the same as telling him that the statement "would not be used against him" and was impermissibly coerced.  Doc. 3, p. 22.  Petitioner also cites Hart v. Attorney General of Florida, 323 F.3d 884, 894-895 (11th Cir. 2003), where the statement was inadmissible because the interrogator told the accused that his "boss says I have to read this thing to you [the *Miranda* warning], not that it means a whole lot." *Id*., p. 23.  Petitioner argues that Detective Lio's statement was the same as a promise that the statement could not be used against him in Florida.  *Id*.  Petitioner contends that had his statement been suppressed, he would not have entered his no contest plea.  *Id*.

Respondent agrees that Petitioner exhausted his state court remedies as to this claim.  Doc. 15, p. 22.  Respondent argues:

> However, it is unknown whether Detective Lio would have denied this allegation.  Petitioner's claim is wholly speculative, because he failed to allege that Detective Lio had ever admitted that he misrepresented the effect of the sworn statement to Petitioner.  Counsel cannot be deemed ineffective for failing to question Detective Lio about this matter, when Detective Lio may have simply denied that he made the alleged statement.  Accordingly, Petitioner failed to allege the facts that counsel was deficient.

Doc. 15, p. 23.  Respondent further argues that even if Petitioner himself had testified that Detective Lio made this statement, the state court would not have believed him because the state court, denying the motion to suppress, credited Lio when Lio's

testimony conflicted with Petitioner's testimony.  *Id.*, p. 24 (citing Ex. F, R. 541-542).

There, the state court found that the interrogation was not a custodial interrogation.  *Id.*

> Petitioner alleged in ground 2 of his Rule 3.850 motion:
>
> The Defendant clearly informed Counsel of Record that due to the fact that the Defendant was told prior to signing of the statement that the Detective was having the Defendant sign a Florida form "pursuant to Fla. Stat. 117.10, it is basic[a]lly irrelevant, because your [sic] in Louisiana at the time of the Statement, "don't worry."  This is clearly coercion to sign a sworn statement yet Counsel of Record was clearly ineffective for failing to raise this issue at the suppression.

Ex. F, R. 22.

> That statute provides:
>
> Law enforcement officers, correctional officers, and correctional probation officers, as defined in s. 943.10, and traffic accident investigation officers and traffic infraction enforcement officers, as described in s. 316.640, are authorized to administer oaths when engaged in the performance of official duties.  Sections 117.01, 117.04, 117.045, 117.05, and 117.103 [pertaining to notaries public] do not apply to the provisions of this section. An officer may not notarize his or her own signature.

FLA. STAT. § 117.10.

> The trial court denied ground 2 without an evidentiary hearing.  Ex. F, R. 366-

370.  With respect to this specific subsidiary claim, the court reasoned:

> Defendant also argues that counsel was deficient in not cross examining Detective Lio regarding the use of a sworn statement form and allegedly informing the Defendant that it would have no effect was an act of coercion.  As previously addressed, the record establishes that counsel questioned the detective on the manner, scope, and length of questioning, in [an] effort to show custody, suspect status, and tactics used by the Detective.  Thus, the Court finds the Defendant failed to establish that counsel's failure to raise the issue of the sworn statement was deficient in light of the other actions taken to bring out the coercive nature of the interview.  As such, this claim is summarily denied.

Ex. F, R. 369.

At the hearing on the motion to suppress, Petitioner testified that Detective Lio told him he could "refuse to answer any of the questions." Ex. F, R. 236. He testified that Detective Lio told him he was free to leave and that he was not under arrest. *Id.* He said that when his superior officer told him to cooperate (Petitioner was on active miliary duty), he thought that meant answer any questions asked. *Id.*, R. 237-238. Petitioner did not testify to any statement involving an oath on a written form.

Detective Lio, who was employed by the Santa Rosa County Sheriff's Office, testified that he went to New Orleans to interview Petitioner. *Id.*, R. 217-218. He said that Petitioner was not placed under arrest, and he told Petitioner that he did not have to talk with him and Petitioner was free to leave at any time. *Id.*, R. 220. Lio took an audio-recorded statement from Petitioner, and a transcript of that interview was available. *Id.*, R. 223-226. Lio did not give Petitioner a *Miranda* warning. *Id.*, R. 228. Lio was not asked about any statements he might have made about the relevancy of a written statement signed by Petitioner.

In the Walton case, law enforcement officers met with the defendant on a park bench. 10 F.3d at 1027. The defendant was free to leave at any time, and no *Miranda* warnings were given. *Id.* "Early in the conversation, [one law enforcement officer told the defendant], 'I've known you for a long time. If you want, you can tell us what happened off the cuff.' " *Id.* The court concluded that this was not a custodial interrogation. *Id.*, at 1028. The court also reviewed the circumstances, including the statement that the officer had known the defendant for a long time, and concluded that the defendant reasonably concluded from the expression "off the cuff" that what he said

would not be used against him.[8]  *Id.*, at 1030.  Also, considering all of the circumstances, the court concluded that the defendant's admissions were involuntary. *Id.*, at 1032.

The underlying claim necessary for this claim of ineffectiveness is that the confession was involuntary.  The issue of whether a confession is voluntary depends upon whether the confession "was the product of a free and deliberate choice rather than intimidation, coercion or deception."  United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005), *cert. denied*, 127 S.Ct. 748 (2006).  The totality of the circumstances must be considered.  Hubbard v. Haley, 317 F.3d 1245, 1252 (11th Cir.), *cert. denied*, 540 U.S. 951 (2003).  "Among the factors we must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police."  317 F.3d at 1253.  "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."  Thompson, 422 F.3d at 1295-1296.  However, "[i]t is clear, that the police's use of a trick alone will not render a confession involuntary. . . .  In cases involving police trickery where a confession has been held involuntary there have been other aggravating circumstances

---

[8] This is an unusual interpretation of the phrase "off the cuff."  MERRIAM-WEBSTER defines "off the cuff" as "not prepared in advance: spontaneous, informal."  MERRIAM-WEBSTER OnLine, found at:  http://www.merriam-webster.com/dictionary.  If one makes a speech "off the cuff," one would certainly think that although informal or spontaneous, whatever is said would be both public and consequential.  It is conceivable, though, that someone might equate "off the cuff" with "off the record," and therefore without official consequences.

as well." United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984), *cert. denied*, 469 U.S. 1219 (1985).  Therefore, a governmental promise of immunity does not, *per se*, render a confession involuntary.  Taylor v. Singletary, 148 F.3d 1276, 1282 (11th Cir. 1998), *cert. denied*, 525 U.S. 1109 (1999).

On this record, Petitioner has not adequately alleged or shown that he had a sufficiently viable claim of involuntariness to warrant an evidentiary hearing on the Rule 3.850 motion.  Petitioner only alleged in his Rule 3.850 motion that Lio told him that having to sign a Florida form "pursuant to Fla. Stat. 117.10, it is basically irrelevant, because you are in Louisiana," and "don't worry."  The statement referred only to whether some written statement would be considered to be a sworn statement.  This is not the same as telling Petitioner that his statements would not be used against him.  An oath creates an official obligation to tell the truth, but an oath has nothing to do with whether the statements, whether true or false, may be used officially.  Indeed, as to the oath, FLA. STAT. § 117.10 simply empowers a Florida law enforcement officer to administer an oath "when engaged in the performance of official duties" and Lio was no longer in Florida.  Perhaps he could not give an oath in Louisiana, though this is doubtful as he was engaged in official duties.  More important though, there is little to conclude from this exchange that Petitioner could reasonably have thought that this meant that his *oral* statements would not be used against him.  Whether under oath or not, Petitioner made oral statements.  The most important record of the oral statements was the audiotape, not some written statement.

Since he lacked a viable claim of involuntariness as to this issued, Petitioner's attorney committed no error and there was no prejudice to the outcome.  Consequently,

Petitioner has not shown that the state court's adjudication of the merits of ground two has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1) and (2).

**Ground Four**

Petitioner contends that his no contest plea was not knowing or voluntary because the court and his attorney did not tell him that he waived his right to appeal the denial of the motion to suppress by entering the plea.  Petitioner contends that prior to the plea, his lawyer told him that he could appeal the denial of the motion to suppress.  Doc. 1, p. 7.  Petition also brings this as a claim of ineffective assistance of counsel.  *Id.*, p. 8.  Respondent concedes that Petitioner exhausted his state court remedies as to this claim.  Doc. 15, p. 25.

The Rule 3.850 court held an evidentiary hearing on this claim.  Ex. F, R. 505-537.  Petitioner was not represented by an attorney.  *Id.*, R. 509.  Petitioner testified that he "only took the plea because my attorney told me that it [sic] was going to attack the statement [the confession] at the appeals court and after the appeals court suppressed the statement, which he said they would rule in our favor, I could return without the statement."  *Id.*, R. 511.  He said: "Your Honor, I wouldn't have taken this plea if I would have known that my attorney wasn't going to preserve my motion for suppression at the appellate level.  That's why I hired Mr. Griffith, Your Honor."  *Id.*, R. 512.  He said that his lawyer advised him to take the plea offer "because of the fact that we're going to be

able to take it for appellate review." *Id.*, R. 517.  He denied that his lawyer told him that

preservation of the motion to suppress issue would jeopardize the plea offer.  *Id.*, R.

517-519.

Petitioner's trial attorney, Michael Griffith, testified that Petitioner "did not view the

case seriously from a point of punishment as the Court does cases such as this

because an original note [sic, apparently an early note in Griffith's file], Mr. Wallis was

talking about possibly two years incarceration." *Id.*, R. 523.  Petitioner's attorney said

that "based upon the deposition of his daughter or daughters, and specifically the

testimony of Suzanna, . . ., that he was facing significant time." *Id.*  Petitioner objected

to this line of questioning, but the trial court said that it was relevant that there were

witnesses who could testify, other than Petitioner's admissions. *Id.*, R. 525.  One child

said that Petitioner took showers with his daughters and had anal intercourse with her.

*Id.*, R. 526.  Griffith said that he was afraid that the court would give Petitioner a prison

sentence substantially more than the "cap" based upon the testimony of Petitioner's

daughters. *Id.*, R. 527.  Griffith said he tried to get the prosecutor to dismiss all but one

count, but the prosecutor said that the best offer was a plea to three counts with a "cap

of 25 years" but with the opportunity to argue for a sentence below the Guidelines

minimum of 16.9 years. *Id.*  He said he was "concerned that the Court would, if you

would, max out Mr. Wallis if they heard the testimony of Suzanna and the other

children." *Id.*, R. 528.  Counsel said that Petitioner had an exposure to 45 years in

prison on the three counts to which he entered his plea, and 60 years if the fourth count

had not been dismissed. *Id.*

Griffith said that he spoke with Petitioner at length about the motion to suppress, focusing upon the claim that because Petitioner had served 19 years in the Coast Guard, he considered his superior's direction to cooperate in the interview to be an order to do so. *Id.*, R. 530. Griffith felt that this was a good argument. *Id.*, R. 531. Griffith was asked whether he and Petitioner had discussions "about preserving that motion to suppress on appeal." *Id.*, R. 531. Griffith responded: "I told Mr. Wallis that if he went to a jury trial, if we couldn't get a reasonable plea offer or one he was satisfied with, that that was always an issue to look at on appeal." *Id.*, R. 532. Griffith said that he "would be very happy if we could convince the judge to be at the bottom end of the guidelines . . . ." *Id.*, R. 533. The court then asked Griffith whether "there was any discussion between you and Mr. Wallis that made his entering the plea contingent upon reserving his rights to appeal the issue on the motion to suppress?" *Id.*, R. 534-535. Griffith responded: "No . . . ." *Id.*, R. 535. He explained that he had had prior experience representing criminal defendants with Mr. Scherling, the prosecutor, "and his plea offers were always that – that's the plea offer; you don't reserve back your right to appeal anything." *Id.*

In denying this claim, the trial court reasoned that the expected testimony of Petitioner's daughters would not have been suppressed, and Petitioner's counsel "did not think the motion to suppress [Petitioner's statements to Lio] was dispositive based on the other readily available evidence." *Id.*, R. 501. He found that Petitioner's attempts to obtain an alternative plea were not fruitful because the prosecutor thought he had a very good case based upon the testimony of the children. *Id.*, R. 502. The court concluded that there was a sufficient basis to go to trial even without Petitioner's

statements, and concluded that the motion to suppress was not dispositive. *Id.* The court also concluded that the failure of counsel to preserve the issue for appeal was not attorney error "considering there was no good faith basis to do so." *Id.* The court observed that absent the plea, Petitioner faced a total of 60 years in prison. *Id.*, R. 503. Noting the testimony of counsel, that counsel told Petitioner that an appeal of the denial of the motion to suppress was an option if the case went to a jury trial and that the preservation of the issue "was dependent on the posture of the case," the court concluded that "there was no agreement to preserve the issue as the basis for the plea." *Id.* The court found that even without a reservation to appeal the denial of the motion to suppress, Petitioner benefitted from the plea. *Id.* Therefore, said the court, neither attorney error nor prejudice to the outcome was shown. *Id.*

Petitioner argues that these findings are erroneous, noting that neither the court nor Petitioner's attorney specifically informed Petitioner that he waived his right to appeal the denial of the motion to suppress by pleading no contest. That is true. The trial court did not provide such advice during the plea colloquy. Petitioner's trial attorney told the court that he had not discussed the issue of preservation of the right to appeal *after* a plea with Petitioner because he knew that the prosecutor would never agree to that in a plea agreement. He only said that he discussed with Petitioner the possibility of an appeal in the context of an unsuccessful jury trial. Further, the trial court never explicitly made a finding as to whether Petitioner's testimony, that his attorney told him that he would reserve his right to appeal the denial of the motion to suppress even if he entered his plea, was credible.

But the argument that the state court's adjudication of this claim has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," is flawed.  The trial court implicitly rejected Petitioner's testimony as not credible, noting instead that Petitioner's attorney said that never discussed with Petitioner the issue of preservation of the right to appeal *after* a plea.  This implicit credibility finding as to Petitioner's testimony had to have occurred.  Otherwise, the court would have reached a contrary conclusion as to attorney error.  The court also implicitly reasoned that the failure to discuss that issue with Petitioner prior to the plea was not attorney error because the prosecutor would never have agreed to it.  That the prosecutor would never have agreed is an implicit factual finding entitled to deference.  Finally, the issue would not have favorably changed the outcome after a trial, even if successful.  Indeed, because a conviction was reasonably probable on the testimony of Petitioner's daughters, even if the motion to suppress had been granted, going to trial would have voided the benefit of a 25 year sentence, exposing Petitioner to 60 years in prison.  As the Supreme Court said in <u>Hill</u>, the assessment of attorney error in the context of a guilty plea "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  <u>Hill</u>, 474 U.S. at 59, 106 S.Ct. at 370-371.  Petitioner here has made no argument at all about what the trial evidence would have been had the motion to suppress been granted.  Counsel has no duty to discuss an issue with Petitioner that essentially led nowhere.  Ground four affords no relief.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Adrian R. Wallis challenging convictions for two counts of lewd and lascivious battery and one count of lewd and lascivious molestation upon persons 12 years of age or older but less than 16 years of age, in the Circuit Court of the First Judicial Circuit, in and for Santa Rosa County, Florida, case number 02-808-CFMA, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on December 8, 2008.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**